No. 33,014

The State of Kansas and The State Corporation Commission, *Appellants,* v. John S. Reed and S. W. Cooper, Jr., *Appellees.*

(65 P. 2d 1083)

Opinion filed March 6, 1937.

*Clarence V. Beck,* attorney general, *Sidney L. Foulston,* county attorney, *Charles W. Steiger* and *Floyd F. Shields,* attorneys for The State Corporation Commission, for the appellants.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This is an appeal on questions reserved by the state on the disposition of a criminal case in which defendants Reed and Cooper were charged with certain infractions of the statute governing the operation of motor vehicles for hire on the public highway.

It appears that defendant Cooper was the president and managing officer of a taxicab company in Wichita. Defendant Reed was an employee of the same company. On May 24, 1935, defendant Reed, with the knowledge and assent of Cooper, transported one Hyatt from Wichita to Kingman, about 42 miles, over a public highway, in a taxicab belonging to Reed's employer. Hyatt paid Reed $5 for this service, which was received on behalf of the taxicab company.

Neither of defendants nor the taxicab company, in whose behalf they were acting in this transaction, had obtained a permit from the State Corporation Commission to operate a taxicab as a contract carrier of passengers on the public highway; nor had they or either of them filed with the commission an insurance policy to secure the payment of any liability they might incur; and neither of the defendants nor their employer had made a deposit of money with the State Corporation Commission to satisfy whatever ton-

mileage fees they or either of them ought to pay under the statute and the authorized regulations of the commission.

Out of the foregoing facts the state filed an information against the defendants in three appropriate counts: (1) the operation of a motor vehicle for hire as a contract carrier of passengers without a permit; (2) such operation without having filed the requisite insurance policy covering liability and property damage; and (3) failure to deposit a sum of money with the commission to satisfy the ton-mileage fees it would owe for whatever transportation services it might perform, as in the instance complained of.

Counsel for the state and for the defendants entered into a stipulation touching the pertinent facts which have been outlined above, and some less significant details of no present importance. Cooper, the manager of the taxicab company, gave some evidence or information touching his company's method of conducting its business of transporting passengers for hire for points and distances more than one mile beyond the corporate limits of Wichita.

"Q. Is it the company's practice to transport passengers for hire to points five or six miles from the city limits? A. Yes, sir.

"Q. That's been the general practice? A. That's been the general practice.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Mr. Cooper, you have been asked about your knowledge of cabs going to other towns. I will ask you to state, to your knowledge, whether or not that is a usual practice or a rare one. A. It is exceedingly rare.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. But these trips were being made occasionally right along? A. Yes, sir.

"Q. Such as this trip to Kingman? A. Yes, sir.

"Q. To your knowledge? A. To my knowledge, yes."

The journal entry of judgment recites that this cause was tried without a jury on November 22, 1935. Appearances for the state and for defendants are recorded. Cooper's presence is recorded. The record then proceeds thus:

"The court, having received and heard the evidence and the arguments of counsel, and duly considered same, on the 8th day of February, 1936, made and entered its decision and judgment for the defendants.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Now, therefore, pursuant to said decision and judgment and on motion of . . . attorneys for the defendants, it is hereby adjudged and decreed that John S. Reed and S. W. Cooper, Jr., *are found not guilty.*"

The state brings the case here on questions reserved as permitted by statute, G. S. 1935, 62-1703, and in accordance with well-established precedents. (*State v. Rook,* 61 Kan. 382, 59 Pac. 653; *State*

*v. Allen,* 107 Kan. 407, 191 Pac. 476; *State v. Short,* 121 Kan. 233, 247 Pac. 114; *State v. Marek,* 129 Kan. 830, 284 Pac. 424; *State v. Mitchell,* 143 Kan. 322, 54 P. 2d 917.)

This right of the state to reserve questions for appellate review is an important one, frequently transcending what may be involved in the particular instance giving rise to those questions. In *State v. Short,* supra, it was said:

"But for this statutory right conferred on the state, an erroneous ruling of a trial court might completely and permanently frustrate the administration of justice within the judicial district presided over by the particular judge who made such ruling. It might result that in an entire judicial bailiwick of a district judge comprising half a dozen counties some feature of the blue-sky law, or the antitrust law, or any other penal statute, would be judicially nullified by an erroneous interpretation of some feature of any such act, while in other judicial bailiwicks other trial judges were giving an interpretation to them that resulted in general obedience to their terms. The way provided by our criminal code to prevent such a situation is by granting to the state the right to reserve for appellate review any adverse ruling which the state's official prosecutors deem of sufficient importance to the proper administration of justice to bring to this court's attention for authoritative determination." (p. 237.)

The present case is a good illustration of the point. It is of little moment whether these two defendants are convicted and fined, or perhaps paroled, for the infractions of this statute as charged in the information in this isolated instance; but it is highly important that the statute, if valid, should be respected and obeyed by all contract carriers operating motor vehicles on the highway; and if the statute is invalid it is a matter of prime importance that its infirmities should be authoritatively declared.

What is the matter with the statute? It is expressly declared that any person who holds himself out to the public as willing to undertake the transportation by motor vehicle of any person who chooses to employ him is a public motor carrier of passengers, and if he renders such service "for hire," although not to the extent of a public motor carrier, he is designated as a "contract motor carrier of passengers." (G. S. 1935, 66-1,108.) No person may operate a motor vehicle as a contract motor carrier except in accordance with the statute. (G. S. 1935, 66-1,111.) It is unlawful for any motor carrier of passengers to operate as such carrier without a license from the commission. (G. S. 1935, 66-1,115.) The statute also requires that a contract carrier of passengers must file a liability insurance policy with the commission to protect the interests of the public

which may sustain damage in person or property through the fault of such carrier. (G. S. 1935, 66-1,128.) It is also required that a contract motor carrier of passengers shall make deposits of money with the commission in prescribed amounts to meet the ton-mileage fees properly chargeable against him in the pursuit of his business as such carrier. (G. S. 1935, 66-1,120 and 66-1,120a.) The commission is vested with power and authority to make rules and regulations for the effective administration of the act and to carry its purposes into effect. (G. S. 1935, 66-1,112, 66-1,112f, 66-1,120a.)

Section 66-1,126 of the General Statutes of 1935 provides:

"Any person who shall operate as any carrier to which this act applies without first obtaining a certificate or license or in violation of any of the terms thereof, or who fails to make any return or report required by this act or by the commission hereunder, or who denies to the commission access to his books or records, shall be guilty of a misdemeanor and shall be punished as hereinafter provided."

Section 66-1,130 of the General Statutes of 1935 reads:

"Every carrier to which this act applies and every person who violates or who procures, aids or abets in the violating of any provision of this act, or who fails to obey any order, decision or regulation of the commission, or who procures or aids or abets any person in his failure to obey such order, decision or regulation, shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not exceeding $500. The inspectors designated by the commission shall have all the lawful powers of peace officers to enforce this act in any county or city of this state."

In view of the foregoing summary of the statute it seems too clear for debate that the information filed against the defendants sufficiently charged three specific public offenses to have withstood a motion to quash.

Counsel for defendants contend that the sort of motor-vehicle service they rendered to Hyatt on the date charged in the information did not come within the terms of the statute referred to above. The statute itself expressly states what motor carriers are excluded from its governance, and so far as concerns these defendants, it reads:

"This act shall not apply to: (a) Motor carriers who shall operate wholly within the corporate limits of a city or village in this state, or not to exceed one mile beyond said corporate limits, or between cities or villages, the corporate limits of which adjoin; (b) or private motor carriers who operate within a radius of twenty-five miles beyond the corporate limits of such city or village, . . ." (G. S. 1935, 66-1,109.)

In support of the decision of the trial court an excerpt from our opinion in *City of Wichita v. Home Cab Co.*, 141 Kan. 697, 42 P. 2d 972, is cited, where the validity of an ordinance regulating the operation of taxicabs by the city of Wichita was the subject of the litigation. In the opinion it was said:

"Defendants assume that the city's only power to deal with such matters as those covered by the ordinance is prescribed by R. S. 1933 Supp. 66-196 and R. S. 13-2801. Neither of these statutes is relied on by the city to sustain its authority to enact the ordinance in controversy . . . . R. S. 1933 Supp. 66-196 is a supplement to the general utilities act, and it is not concerned with the regulation and control of taxicabs like those of defendants which run anywhere and everywhere in or out of the city, without having 'fixed termini or over a regular route.' " (pp. 699, 700.)

It hardly seems necessary to observe that to wrest a few lines of an opinion from its context is not a helpful way to aid a court to reach a correct decision on a question of law. In *Foresman v. Foresman*, 103 Kan. 698, 702, 175 Pac. 985, 176 Pac. 147, it was said that the language of judicial opinions "must be interpreted in the light of the particular facts to which it was applied." Moreover, R. S. 1933 Supp. 66-196 has been repealed by Laws 1935, ch. 237, and it is not of any present concern.

In view of the foregoing it is clear that the disposition of this cause in the court below was erroneous, and the state's appeal on the questions reserved is sustained.